## Lucas, et al. v. Brown, et al.

(Decided March 19, 1920.)

### Appeal from Mercer Circuit Court.

1. Wills—Testator's Signature—Place for.—The proper place for testator's signature to an orderly arranged will is at the end thereof, that is, the logical or physical end. This does not necessarily mean that the signature shall be in immediate juxtaposition to the concluding words of the dispository provisions. However it should be sufficiently near to afford an inference that testator intended to indicate that his testamentary dispositions had been fully and completely expressed.

2. Wills—Testator's Signature.—A hiatus between disposing portions and the subscription will not affect the validity of a will if there is a substantial compliance with the statute.

3. Wills—Attestation.—Where the dispository provisions and the testimonium clause of a will occupy all but three lines of the first page of a folio of legal cap and the attestation clause begins on the first line of the reverse page of said sheet, which is immediately followed by the signatures of testatrix and the witnesses, the will is valid.

C. E. RANKIN for appellant.

J. F. VANARSDALL and E. H. GAITHER for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

This appeal brings in question the validity of the will of Juretta Brown, dated December 14th, 1895, by the terms of which, after making provision for the payment of her debts and funeral expenses, she devised her entire estate to her brother, Joseph Brown. She died in July, 1918.

Miss Brown's testamentary capacity is not questioned, there is no claim of undue influence, due attestation is proven by the witnesses, and it is conceded the will is valid in all respects excepting only the location of the signature of testatrix. The will was written in longhand by a county surveyor on a folio of legal cap. The dispositive part and the testimonium clause consume the entire first page with the exception of three lines, the last of which was so near the bottom of the sheet that it would have been difficult to write on it. Continuing on the next or second page, and on the reverse side of the sheet upon which the foregoing appears, beginning on the first line thereof, is the attestation clause, following which are the signatures of testatrix and the witnesses.

Appellants (contestants) contend the will is not properly subscribed because too much blank space was left on the first page; that testatrix should have signed her name immediately after the testimonium clause. In support of this contention we are referred to Kentucky Statutes, section 468, which reads:

"When the law requires any writing to be signed by a party thereto, it shall not be deemed to be signed unless the signature be subscribed at the end or close to such writing."

And Kentucky Statutes, section 4828, providing in part as follows:

"No will shall be valid unless it is in writing with the name of the testator subscribed thereto. . . ."

Under the statute of frauds, which merely required a will to be in writing and signed, it was immaterial where the signature was placed, if placed with the intention of authenticating the document. For example, a will in testator's own handwriting, commencing, "I, A —————————— B ——————————, do declare," etc., etc., would be a sufficient compliance with the statute. Sarah Miles' Will, 4 Dana 1. But by a later statute in England and in many of the American states, including Kentucky, it is provided that a will shall be signed or subscribed at the end thereof. These statutes have re-

ceived the endorsement and approval of the courts; they are intended to prevent any additions being made to a will after it has been executed, and to act as a wholesome safeguard against fraud.

Courts are loath to declare wills void. A construction effectuating the intention of the testator will be given when possible, but in passing upon the validity of wills certain well recognized rules, legal principles and statutory provisions must be followed.

The precise question presented by this record has not heretofore been before this court, and to the better understanding of this opinion, the will being short, we copy it in its entirety. The dotted line indicates the bottom of the first page:

"I, Juretta Brown, of the county of Mercer and state of Kentucky, being of sound mind and in possession of all my reasoning faculties do make this my last will, revoking all *form* wills.

"First I desire all my doctors bills and funeral expenses paid out of my estate, together with all my just and honest debts just as soon as practical out of my estate, after my demise.

"Second. After the above clause section first has been complied with I give, devise and bequeath all my estate both real and personal to my beloved brother, Joseph Brown.

"In witness whereof I have signed and sealed and published and declared this instrument as my last will at Harrodsburg, Ky., on the 14th day of December, 1895.

"The said Juretta Brown at Harrodsburg, Ky., on the 14th day of December, 1895, signed and sealed this instrument, and published and declared the same as and for her last will. And we at her request and in her presence and in the presence of each other, have hereunto written our names as subscribing witnesses.

"Witness: A. G. Vivion.          "JURETTA BROWN.

"Witness: Grant Vivion.

        "Isaac I. Hendren."

The proper place for testator's signature in an orderly arranged will is at the foot or end thereof, that is the logical or physical end, on the line following the testimonium clause. This does not necessarily mean that the signature shall be in immediate juxtaposition to the concluding words of the dispository provisions. It should be sufficiently near to afford a reasonable inference that testator intended to indicate that his testamentary dispositions had been fully and completely expressed.

The hiatus between disposing portions and the subscription will not affect the validity of the will if there is a substantial compliance with the statute.

The distance between the last line of the instrument and the signature has not been fixed by statute, nor is likely to be.

A slight space such as a line, or even more, might be left blank between the written matter and the signature without rendering the will void. To leave blank an entire page or more between the two would indicate a disregard of the requirements of the statute, whether resulting from ignorance or intention, which might prevent its admission to probate. This is well illustrated by the opinion in Soward v. Soward, etc., 1 Duv. 126, the chief reliance of appellants. The court there says no general rule can be laid down as to what would constitute an unnecessary and unreasonable blank space between the conclusion of the will and testator's subscription, that each case must depend upon its own peculiar facts and circumstances. The writing signed by Soward occupied the first and a little over one-half of the second sheet of ordinary cap paper; the remainder of the sheet was blank. It was then folded in the form of a letter so as to enclose the half containing the writing within the other half. It was then sealed with wax and three persons signed their names on the outside as witnesses. None of them saw or knew the contents of the enclosure and had no information regarding same other than what Soward told them. The court held the requirements of the statutes were not complied with, and properly so.

A signature following the testimonium clause is signed at the end, although there are blanks in the body of the will.

A will is not signed at the end when the signature is followed by a dispositive clause which adds to or revokes previous bequests, but if the clause below the signature does not affect the disposition of the estate, it is usually held not to invalidate the instrument. Ward, &c. v. Putnam, &c., 119 Ky. 889, 85 S. W. 179. In the above case a will was sustained where the entire disposition of the estate was above the signature of testatrix, but following the signature were the appointment of executors, the testimonium and attestation clauses and date.

The signature of testator should generally be placed above the attestation clause, but the signature beneath such clause is a sufficient compliance with the provision that the signature must be at the end.

An attestation clause is not strictly a part of the will, but rather a certificate thereto, and the signature may either precede or follow it and still be at the end of the will. Younger v. Duffie, 94 N. Y. 535, 46 Am. Rep. 156; Matter of Laudy, 78 Hun (N. Y.) 479, 29 N. Y. S. 136 (affirmed in 147 N. Y. 699, 42 N. E. 724); In re Busch's Will, 150 N. Y. Supp. 419; Hallowell, Admr. v. Hallowell, et al., 88 Ind. 251; Gale v. Freeman, 153 Wis. 337, 141 N. W. 226.

In Graham, et al. v. Edwards, et al., 162 Ky. 771, 173 S. W. 127, the will in question so completely filled a page of legal cap as not to leave room at the bottom for testator's signature and he wrote his name on the marginal line. It was held to be a sufficient signing despite the space left between his name and the margin of the sheet.

In Flood, &c. v. Pragoff, &c., 79 Ky. 607, though the signature to a will preceded the date, it was held the statute had been complied with.

Morrow's Estate, 204 Pa. St. 479, 54 Atl. 313, involved the validity of a will in form and manner of execution practically identical to that of Miss Brown. There the paper probated consisted of one sheet of foolscap on the obverse and reverse of which were written a will and codicil. The will began at the top of the obverse page and continued to within two lines of the bottom, where there was a blank without a signature. At the top of the reverse page there was an attestation clause, followed by the signature of the testatrix and two witnesses. This was held to be a valid will.

Summarizing the opinion, the court says that the absence of the attestation clause and signature at the foot of the page naturally leads to inquiry as to the completion of the purpose of testatrix, and this is found on the reverse side of the leaf. The fact that the attestation clause and signature were written on the same leaf as the declaratory and dispository clause of the will, that they were written at the top of the reverse page, and purport to have been signed and sealed by the testatrix as her last will and testament, leave no room for doubt that they had reference to and were the completion of· the will begun on the obverse page of the leaf.

Reference to the "above named Nancy A. Morrow" in the attestation clause could only be that the person whose name appeared at the beginning and whose signature followed the attestation clause was testatrix. Identity of name implies identity of person. In the course of the opinion the court says:

"The attestation clause is in the position in which the majority of persons would expect to find it, and would be vain and useless without this antecedent. Who that writes or reads a letter does not involuntarily turn over leaf after leaf seeking the continuation until he comes to the signature? How many are there who from force of habit, or prudence, or economy, or necessity, have written wills on both sides of a leaf of foolscap, and how many titles have passed, without a thought of invalidity. After all it is the common understanding and practice which must determine questions of this kind. There have been hundreds of wills written in circumstances of necessity beyond professional aid, and in which the application of technical rules would produce hardships not to be endured.

"While leaving a blank at the foot of the first page was imprudent in that it afforded an opportunity for fraudulent practice, it certainly would not of itself invalidate the will."

To same effect see Hunt, et al. v. Hunt, 1 L. R. P. & D. 209.

It is possible the writer of the will was under the impression that it was not proper to separate the attestation clause, that it had to be on one page, and so that it and the signature would be together he · had testatrix sign as she did.

In addition to the authorities above referred to, the conclusions herein reached are supported by the following text books and decisions. 40 Cyc. 1105; Woerner on Administrators, p. 64, et seq; Williams on Executors, p. 107, et seq; Thompson on Wills, sec. 444; Alexander on Wills, sec. 421; Beach on Wills, sec. 31; Underhill on Wills, sec. 185; Schouler on Wills, secs. 311 and 312; Page on Wills, sec. 183; Mader v. Apple, 80 Ohio St. 691, 131 Am. St. Rep. 719, 89 N. E. 37, 23 L. R. A. (N. S.) 515.

Due to irregularities incident to their execution the probate of instruments tendered as wills, has often been refused and the estate of many a deceased person has been distributed in a manner entirely different from that intended, all because the maker did not seek competent advice. Frugality is a commendable trait but not infrequently is so practiced and carried to such extremes as to prove most costly. False economy is a large contributor to intestacy. The payment of a nominal fee has oftentimes proven to be a wise and provident investment, especially when paid for the drafting of one's will to a person qualified to do so. On the contrary, taking the advice or accepting the services of an unskilled or incompetent scrivener, perhaps in an endeavor to save a fee, has resulted most disastrously. In the execution of so sacred and important a document as a person's last will, the cost is a minor consideration. This is an occasion when one can ill afford to take the advice of an untrained or inexperienced mind. Here wisdom is indeed better than rubies. It would be well for those intending to execute documents testamentary to profit by the mistakes of many others and prevent intestacy by securing proper and competent advice so that their wishes as to the disposition of their estate may be aptly and correctly expressed in a well drafted will, executed according to law. In case of sudden illness or other emergencies it may be impossible to secure such advice, but when possible and time permits it should be sought and followed.

The subscription by Miss Brown was irregular. The proper place for testatrix to have affixed her signature was on the line next after the testimonium clause on the first page, and preceding the attestation. Neither the failure to so sign, nor the leaving of the blank space on the first page will invalidate the will where, as in the

present instance, it was signed after the attestation clause and duly witnessed.

Finding no error in the judgment appealed from same is accordingly affirmed.