In the matter of the estate of JOSEPH HIRSCH. SCHWIELLER, deceased.

[Decided July 24th, 1923.]

Testator executed a testamentary draft in English, and immediately afterwards one in Yiddish, believing the English draft to be a translation of the Yiddish draft. In fact there was a material variance. His reason for executing the English draft was because of fear that a will in Yiddish might not be legal.—*Held,* that there was no evidence of the statutory publication or declaration of the English draft as a will; that testator's intent as to its being his will was conditional, at most; that such intent was based upon misrepresentation to him that it was essentially the same as the Yiddish draft; and that even if duly executed it was immediately revoked by the execution of the Yiddish draft. and that the latter only was entitled to probate.

On final hearing.

*Mr. August C. Streitwolf,* for the appellant.

*Mr. Thomas H. Hagerty* and *Mr. Edmund A. Hayes,* for the respondents.

BUCHANAN, VICE-ORDINARY.

This is an appeal from a decree of the Middlesex orphans court, on the application for probate of the will of Joseph Hirsch Schwieller, deceased.

The paper presented to the orphans court as containing the will of decedent was a large sheet folded vertically down the middle. On the left of the fold is a writing in English purporting to be the last will and testament of decedent; on the right of the fold is a writing in Yiddish, also purporting to be the last will and testament of decedent.

The orphans court decree establishes the Yiddish writing, and that alone, as the will of decedent. Appellant contends the decree is erroneous in excluding the English writing; that both together constitute the true will.

Both "wills" are signed by decedent; both are dated January 13th, 1921; neither has the usual (nor any) attestation clause; both are signed by the same subscribing witnesses.

The subscribing witnesses are in substantial accord as to the facts at the time of execution. One of them, Rabbi Boskin, was asked by testator to draft his will and did so several days before the date of execution. He drafted it in Yiddish —this draft being the "Yiddish will" offered for probate. Testator was an educated man, knowing both Yiddish and Hebrew, but having a slight knowledge of English. It is at least doubtful if he could read English; he could, and did, read the "Yiddish will." After it had been completed, he suggested that possibly it might not be legal because written in Yiddish, and the rabbi said that he would translate it, or "the essential parts" thereof, into English, and proceeded to do so. This "translation" is the "English will" on the left-hand side of the paper propounded for probate. It is far from being a literal translation, and omits some two paragraphs of recital and exhortation, which appear in the "Yiddish will." The most serious discrepancy is at the end (how serious it is does not appear, for there is no evidence as to how much property he had nor how many heirs-at-law and next of kin he left), where the "English will" contains a residuary clause which the "Yiddish will" does not. The final gift in the "Yiddish will" is of two houses (subject to a legacy charge) to testator's three sons, Max, Jacob and

*95 N. J. Eq.*        In re Schwieller.

Abraham. The final gift in the "English will" is to the same three sons, but is of *"the remainder of my estate, including the equity of my two houses,"* &c.

I am clearly of opinion that the decree of the orphans court must be affirmed, for several reasons.

Assuming that the "English will" was intended as a will, and was duly executed as such, it is fully established that the "Yiddish will" was intended as a will, was duly executed as such, and was in fact the last one to be executed. The execution of the "English will" was first entirely completed, and then the "Yiddish will" was immediately afterwards executed. The latter, therefore, is the true and only "last will." It was not declared to be a *codicil* but a *will;* it does not recite that it is a codicil; and from a perusal of the two, it clearly is not a codicil, and was not so intended. Since it is not a codicil— since both instruments are separate wills, not complementary of each other, the one latterly executed is the valid will revoking the other.

However, I am entirely satisfied from consideration of the testimony, that there is at least a failure of adequate proof that the "English will" was in fact published or declared by testator to be his will. The witness Boskin testified on direct examination (being questioned with reference to the "Yiddish will") that testator said, at the time of execution, "that is the last will and testament; I want it to be." On cross-examination he says that testator did not declare the English will. Being later questioned by the court, he testified that when the paper was signed testator said "that is my last will." "Q. When did he say that, after he had signed the Yiddish——" "A. After he had signed the Yiddish paper." The other witness, Fertig, testified on direct examination, in reference to the "Yiddish will," that "Mr. Swiller said that his last wishes to have that will be in consideration." On cross-examination: "Q. And he acknowledged the English will as his last will and testament?" "A. The Jewish."

In re Schwieller.    *95 N. J. Eq.*

Moreover, I am also satisfied that the "English will" was not intended by testator to be his last will and testament. At best, he had such intention only conditionally—only if the "Yiddish will" were not legal by reason of being in Yiddish. That contingency, on which the conditional intent rested, failed. Furthermore, whatever intent he had that it should, even conditionally, be his will, was based on the representation to him by Boskin that it was essentially the same as the "Yiddish will," when in fact there is a material variance.

The decree will be affirmed, with costs.