# PREROGATIVE COURT.

## MAY TERM, 1871.

29 | 463
55 | 761

In the matter of the Probate of the Will of Sophia A. Kirk-
PATRICK, and granting administration of her estate.

1. Where it appears from the attestation clause, that the will offered for probate as the last will and testament of the testatrix, was signed and declared by her to be such will, in the presence of the subscribing witnesses, the statutory requirement that both witnesses should be present at the same time, is shown to have been complied with.

2. A cancellation of a legacy, by the testator, by drawing lines with a pen across the words, is a sufficient revocation.

3. In this state, when the executor dies before the testator, a residuary legatee is entitled to administration in preference to legatees, next of kin and creditors. And it is not discretionary with the Ordinary or Surrogates to grant it to any other person than the residuary legatee, when he is willing and able to accept.

4. Where the residuary legatee is a corporation aggregate, administration with the will annexed will be granted to one of their own number, named by them for that purpose.

5. Legatees, or their nominee, have no right to administration in preference to next of kin. The residuary legatee has such right. And where there are next of kin, administration cannot be granted to a person of the legatee's selection, until the next of kin have been cited, consented, or received notice.

The will in this case was produced for probate by John Chetwood, esquire, in presence of the President of Rutgers College, the residuary legatee in the will. There was no caveat against the will, nor any dispute about its execution or validity. None of the next of kin of the testatrix intervened in any way. There were petitions presented by most of the specific legatees, that John Chetwood, esquire, who had been the counsel and the confidential adviser of the testatrix, should be appointed administrator, with the will annexed. His father, John J. Chetwood, the sole executor named in the will, had died before the testatrix, and within a year

after the execution of the will, which is dated August 30th, 1859. The testatrix died in March, 1871.

The trustees of Rutgers College, the residuary legatee in the will, presented a petition, signed by their President, with the corporate seal, attested by their treasurer, annexed, requesting that administration be granted to James A. Williamson, one of their own number, whom they had designated for that purpose, and insist upon their right to have the administration committed to him, or some person named by them.

None of the next of kin have joined in either application, or presented any application on their own part.

*Mr. B. Williamson* and *Mr. I. W. Scudder*, for Mr. Chetwood.

*Mr. G. C. Ludlow* and *Mr. J. C. Elmendorf*, for Rutgers College.

The Ordinary.

.The first question presented, is upon the probate of the will. The subscribing witnesses are both dead. But their signatures to the attesting clause are fully proved, and are evidence of the facts recited in that clause; that she signed, published, and declared that paper as and for her last will and testament in their presence, and that they signed their names to it in her presence; although it does not recite that they were both present at the same time at the signing, yet there being but one signature of the testatrix, the fact that both saw her sign shows the presence of both at the same time. It is also proved, *aliunde*, that her signature is in her handwriting. Such proof is advisable, as it is of a most essential fact, although the presumption arising from the attestation of the witnesses, renders it not absolutely necessary.

Two of the legacies in the will are canceled by lines drawn with a pen across and upon the words. It is abundantly

shown that this canceling was done by the testatrix : First, by the fact that the will was found in this condition a few hours after her death, in the iron chest in her bed room, in which she kept her valuable papers. This was unlocked, and the will taken out in the presence of Mr. Chetwood, and several other persons ; and it is proved by Mr. Chetwood, in whose custody it has been ever since, to be in the same condition as when taken from the iron chest.

Besides this, there are memoranda in the margin, one opposite each canceled part, signed with her name in one case, and her initials in the other, stating that she wished to *erase* these parts. These are in her handwriting. The canceling was clearly done by her.

A will, or any devise or legacy in it, can be revoked by canceling, as well as by a written revocation attested by two witnesses. The act of 1846, concerning wills, (*Nix. Dig.* 1028, § 2,) provides that no devise or *bequest* in writing, or any clause thereof, shall be revoked, otherwise than by some other will in writing, or by burning, canceling, tearing, or obliterating the same, by the testator himself, or in his presence, and by his direction. Neither section sixteen of that act, nor the second section of the act of 1851, (*Nix. Dig.* 1032, § 25,) which enacts that all *written* revocations of wills shall be executed in the same manner as wills are required to be executed, affects this provision for cancellation of a devise, or legacy, or clause of a will. The memoranda in the margin, without the actual canceling, would have had no effect, as they are not properly attested. Their only effect is to show that the lines were drawn by the testatrix.

In England it has been repeatedly held that such canceling of a legacy by lines drawn by the testator, revokes the legacy so canceled, and does not affect the residue of the will. *Mence* v. *Mence,* 18 *Ves.* 350; *Martins* v. *Gardner,* 8 *Sim.* 73; *Francis* v. *Grover,* 5 *Hare* 39; *Larkins* v. *Larkins,* 3 *B. & P.* 16; *Short d. Gastrell* v. *Smith,* 4 *East* 419; 1 *Jarman* 119; *In re goods of Woodward,* 2 *Prob. and Divorce Rep.* (*Law Council Rep.*) 206; *Rogers Ecc. Law* 1018; 1 *Redf. on Wills* 307.

In the matter of the will of Sophia Kirkpatrick.

The will, except the fifth clause and the part of the sixth clause which is canceled, must be admitted to probate.

The residuary legatee in this case claims the administration as matter of right, the only executor named in the will having died before the testatrix. The seventh section of the act concerning executors and administrators (*Nix. Dig.* 303), provides that if any person die intestate, or the executors named in the will neglect, for forty days, to prove the same, then administration of the goods of the intestate, or of the estate of such testator, with the will annexed, shall be committed to the widow or next of kin, or some of them; and if none of them will accept, then to such proper person as will accept. These are essentially the same as the provisions in the statute of 8 *Jac.* 1, *ch.* 5. Neither provide for the case where the executor dies before the testator.

Yet in England all the courts and authorities, and the writers on ecclesiastical and testamentary law, agree in holding that not only in cases where executors die before the testator, but in cases where they renounce or neglect to prove the will, which are directly in the provisions of the statute, administration with the will annexed must be committed not to the next of kin, but to the residuary legatee where there is one. This is done on the same principle that the administration of the estate of an intestate is committed to the next of kin. In each case it is committed to the person most interested in the proper administration of the estate. *Toller on Ex'rs* 99; *Wentworth's Office of Ex'rs* 487; 1 *Williams on Ex'rs* 403 *and* 404, *n.* 1; *Cootes' Probate Practice* 47; *Rogers' Ecclesiastical Law* 1039, *n. a, and* 1043; *Linthwaite* v. *Galloway,* 2 *Lee, Ecc.,* 413; *Taylor* v. *Diplock,* 2 *Phill.* 261; *West* v. *Willby,* 3 *Phill.* 374; *Atkinson* v. *Barnard,* 2 *Phill.* 316.

In the case last cited, Sir John Nicholl held that a residuary legatee was entitled to administration in preference to legatees and annuitants, even where there was no prospect of a residuum. He held that, although it might appear that the estate would be better administered by the legatees than

by the residuary legatee, the court had no discretionary power to prefer them to the residuary legatee, or, what was the same, that there was no precedent for the exercise of such power. He says: "The residuary legatee is the testator's choice; he is the next person in his election to the executor. The practice goes along with that preference;" and cites *Thomas* v. *Butler*, 1 *Ventris* 217, in confirmation of that rule.

These decisions of the testamentary courts in England have always been recognized as governing the courts of probate in this state; they are the only guide. When the testamentary courts there disregard the provisions of a statute, or the settled rules of the common law, they are controlled by the common law courts by writs of mandamus and prohibition. These courts have refused to interfere by writs of mandamus with the testamentary courts in granting administration to the residuary legatee. This rule must then be considered as the law in this state, that a residuary legatee is entitled to administration in preference to legatees, next of kin and creditors, and that it is not discretionary with the Ordinary or Surrogates to grant it to any other person than the residuary legatee, when he is willing and able to accept.

The question whether a corporation aggregate can be an executor or administrator presents the next difficulty. It is well settled that a corporation sole can be executor. The person who constitutes the corporation can take the oath and execute the office. The older authorities hold, or rather lay down, the rule that a corporation aggregate can be an executor. Later authorities seem to hold the opposite doctrine, though in substance they agree with it. They hold that a corporation aggregate cannot execute the office of executor, as it cannot take the official oath; but that in such case, administration with the will annexed will be committed to persons appointed by them for the purpose, who are styled syndics. *Swinburne on Wills* 5, § 1; *Wentworth Off. of Ex'rs* 39, n. 1; 3 *Bac. Abr.* 5, tit. *Executor;* 11 *Vin. Abr.*

140; *Toller on Ex'rs* 30; 1 *Williams on Ex'rs* 199; *In re Darke*, 1 *Swabey & Tristian* 516; 2 *Redf. on Wills* 59, § 3.

So, when the king is appointed executor, as no suit could be brought against him, letters testamentary are not issued to him, but to a person appointed by him for that purpose. *Toller* 30; *Went.* 29, *n. a*; 4 *Inst.* 335.

The case of a corporation aggregate falls clearly within the principle of the king, and of a corporation sole. I think the case is stronger when, as here, the application is to commit administration to one of the corporators. All corporations consist of the natural persons who constitute them; these natural persons are the corporation, and there is no reason why they should not, like a corporation sole, have the executorship or administration committed to them individually. This is the view of Godolphin, who, when stating who may be appointed executors (p. 75, ch. 1, pt. 2, § 1,) says, " or many, joyntly representing one body, as a college, city, or other corporation." Any number of the next of kin may have administration jointly. When the corporators are too numerous, they may select one, or the Ordinary may, of his own choice, prefer any one, as in the case of next of kin.

The principle being established that the residuary legatee is in all cases entitled to the administration, and the difficulty of the execution of the trust being obviated by the course pursued in the case of the king, of a corporation sole, and of a corporation aggregate executor, I think that no discretion is left to me but to apply these settled principles to the case before me, and to grant the administration to one of its own number, named for that purpose by the residuary legatee.

If the authorities had led to the opposite conclusion, that a corporation aggregate, being itself unable to execute the office of administrator, has no right to have the administration committed to one of its members, or to some person appointed by the corporation to act for it, then, as the other legatees clearly have no right to have it committed to their

appointee, as far as these two persons are concerned, neither would have any right, but the appointment of either would have been in the discretion of the Ordinary.

Such discretion, as in all cases of judicial discretion, must be exercised according to some principle, and not according to the personal preference or the caprice of the judge. And in a case like this, it should be guided by the principle that for centuries has controlled the testamentary courts in deciding the *right* to administration, even against the literal meaning of the words of the statute. It should be exercised so as to give the administration to the person selected by the residuary legatee, the party most interested in the conduct of the administration, to insure a careful and prudent administration. In many cases, and I presume in this, the other legatees will neither gain nor lose by a more or less prudent administration. The residuary legatee always must. And, therefore, the discretion of the judge ought to be exercised for the protection of the residuary legatee, where the person proposed is a proper, competent, and responsible person. In the present case, both persons are alike beyond exception in these respects.

Legatees, or their nominee, have no right to administration, in preference to next of kin. The residuary legatee has such right. And as in this case it appears by the will that there are next of kin, no administration could be granted to Mr. Chetwood until the next of kin had been cited, consented, or received notice. 1 *Williams on Ex'rs* 407; *Kooystra* v. *Buyskes*, 3 *Phill.* 531.

Administration, with the will annexed, must be committed to James A. Williamson, one of the corporators of Rutgers College, appointed by the corporation to receive it for them.